IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS; LEAGUE OF UNITED LATIN AMERICAN CITIZENS OF TEXAS; JOSEPH C. PARKER, Jr.; HECTOR FLORES; SANFORD LEVINSON; YVONNE M. DAVIS; MARY RAMOS; GLORIA RAY; GUADALUPE TORRES; RAY VELARDE; and DORIS WILLIAMS, Plaintiffs, <br><br> v. <br><br> GREGORY WAYNE ABBOTT, in his official capacity as Governor of the State of Texas; and ROLANDO PABLOS, in his official capacity as Secretary of State of the State of Texas, Defendants. | Civil Action No. 5:18-cv-00175 |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

In their response, Plaintiffs do not dispute the 230-year history of the winner-take-all appointment method that 48 states and the District of Columbia currently use. Nor do they dispute the century of binding precedent denying judicial challenges to such a system. Rather, they claim that this long history is "irrelevant" and that the abundance of cases stacked against them are "unavailing." Resp. 3. But Plaintiffs ignore multiple recent opinions dismissing identical challenges, overlook critical aspects of controlling cases, and seek to expand legal doctrines beyond all reason to cover mere political defeat at the polls. Nothing in the response cures Plaintiffs' failure to state a claim upon which relief can be granted.

1

**I.     SETTLED PRECEDENT FORECLOSES PLAINTIFFS' CLAIMS.**

Over a century of binding precedent—including the Supreme Court's summary affirmance in *Williams v. Virginia State Board of Elections*, 393 U.S. 320 (1969)—disposes of Plaintiffs' one-person, one-vote claim. Though *Williams* is controlling, Plaintiffs argue that the ruling "no longer holds in the face of factual and doctrinal shifts in the one person, one vote jurisprudence." Resp. 17–18. But they cannot overcome this complete bar to their action.

Initially, Plaintiffs suggest that the facts and law upon which they rely must precisely replicate those from *Williams* for it to foreclose this action. *See id.* at 19–20. But that misstates the test for evaluating whether a summary affirmance controls later actions. Summary affirmances "prevent lower courts from coming to opposite conclusions on the precise *issues* presented and necessarily decided by those actions." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (emphasis added). "The Supreme Court's summary disposition," accordingly, "will not control later lower court cases involving significantly dissimilar facts." *Auburn Police Union v. Carpenter*, 8 F.3d 886, 894 (1st Cir. 1993); *see, e.g.*, *Mandel*, 432 U.S. at 177 (holding that summary affirmance facts were "very different from the facts of this case"). Nor will it control if there have been "supervening doctrinal developments." *Lecates v. Justice of Peace Court No. 4 of State of Del.*, 637 F.2d 898, 902 (3d Cir. 1980). Absent that, lower "courts are bound by summary decisions . . . until such time as the [Supreme] Court informs (them) that (they) are not." *Hicks v. Miranda*, 422 U.S. 332, 344–45 (1975) (citation and quotations omitted).

Resolution of this case is thus especially straightforward given the lack of *any* relevant differences—let alone "significant" or "supervening" differences—between this case and *Williams*. Mot. 6–8. The only factual distinction Plaintiffs allege is that Virginia, unlike Texas, included the names of electors on the ballot. Resp. 20. But the *Williams* briefing shows that Virginia's ballot listed each party's electors *and* the presidential/vice-presidential candidates. Resp. Ex. A at 4. Under that system, a voter could "vote only for one or another political party, and thus for the party's nominees for President and Vice President" and "[n]o vote [could] be cast and counted for any elector or electors individually, or separately from the other electors." *Id.* There is no relevant difference between the Virginia system *Williams* upheld and the modern electoral practice in Texas.

Plaintiffs' legal distinctions fare no better. They allege that "there have been dramatic changes to the applicable legal landscape" since the winner-take-all method became widespread nearly 200 years ago. Resp. 15. But almost all of the doctrinal developments upon which they rely, including the 1868 adoption of the Fourteenth Amendment, the creation of the one person, one vote framework in the early 1960s, *Gray v. Sanders*, 372 U.S. 368 (1963), and *Burns v. Richardson*, 384 U.S. 73 (1966), Resp. 7–18, predate *Williams*. The only cases Plaintiffs point to that postdate *Williams* are *White v. Regester*, 412 U.S. 755 (1973), and *Bush v. Gore*, 531 U.S. 98

3

(2000). Resp. 11–12. But *White* found that Texas had engaged in intentional vote-dilution. *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 481 (1997).[1]

Indeed, both *White* and *Burns* make plain that an assertion that an electoral system may "minimize or cancel out the voting strength of racial or political elements of the voting population," *Fortson v. Dorsey*, 379 U.S. 433, 439 (1965), has no foothold in the one person, one vote rule. Under *White*, a redistricting plan that "cancel[s] out or minimize[s] the voting strength of racial groups" violates the Equal Protection Clause's ban on racial discrimination *as opposed to* the one person, one vote rule. 412 U.S. at 763–65. *Burns* likewise held that even when "the requirements of *Reynolds v. Sims* are met," an apportionment plan can still violate the Equal Protection Clause by "operat[ing] to minimize or cancel out the voting strength of racial or political elements of the voting population." 384 U.S. at 88. That is because the one person, one vote rule ensures "representational equality" for all voters, *Evenwel v. Abbott*, 136 S. Ct. 1120, 1126 (2016), while "vote dilution" is about whether a "voting scheme [is] a purposeful device to minimize or cancel out the voting potential of racial or ethnic minorities," *Miller v. Johnson*, 515 U.S. 900, 911 (1995) (citations and quotations omitted).

At bottom, Plaintiffs' argument that any of these cases (or all of them together) radically transformed the one person, one vote rule is misplaced. When significant

---

[1] Plaintiffs' continued insistence that *Gore* silently eliminated the "invidiousness" requirement has no merit. Resp. 22–23. They do not even try to rebut Defendants' explanation as to how *Gore* enforced the "invidiousness" requirement as opposed to eliminating it. The notion that the decision revolutionized one person, one vote law is simply untenable. Mot. 12–13.

4

doctrinal developments overtake a summary affirmance, lower courts do not have to squint to see it. *See, e.g.*, *Kitchen v. Herbert*, 755 F.3d 1193, 1205 (10th Cir. 2014) (addressing *Baker v. Nelson*, 409 U.S. 810 (1972)).[2]

## II. PLAINTIFFS FAIL TO STATE A CLAIM EVEN IF THIS ISSUE IS NOT SETTLED.

### A. THE ONE PERSON, ONE VOTE CLAIM FAILS AS A MATTER OF LAW.

Even on its own terms, Plaintiffs' one person, one vote claim fails as a matter of law. Precedent and history dating back to the Founding establish that a statewide winner-take-all system for appointing electors does not violate the one person, one vote rule. Mot. 3–13. Plaintiffs' counterarguments all miss the mark.

Plaintiffs ask the Court to disregard more than two hundred years of history and precedent, including *McPherson v. Blacker*, 146 U.S. 1 (1892), based primarily on immaterial distinctions in the way various States have implemented their winner-take-all systems over time. Resp. 7–11. But *McPherson* stands for a fundamental proposition that Plaintiffs cannot avoid. When it comes to appointing electors through a popular election, so long as "each citizen has an equal right to vote, the same as any other citizen has, no discrimination is made." *McPherson*, 146 U.S. at 40. That is why the Supreme Court made clear that statewide elections that give every voter an equal vote "automatically" satisfy the one person, one vote rule irrespective of whether the

---

[2] Plaintiffs also do not seriously grapple with *Hitson v. Baggett*, 446 F. Supp. 674 (M.D. Ala), *aff'd*, 580 F.2d 1051 (5th Cir. 1978) (unpublished). Mot. 8 n.1. The plaintiffs in that case did not limit their challenge to the "apportionment of Electors to the states." Resp. 19–20 n.9. They alleged, similar to Plaintiffs, that "if Alabama's presidential electors were selected on a district basis, minority voters, because of their geographic concentration, could control the selection of at least one or more of the state's electors." *Hitson*, 446 F. Supp. at 676.

election is for a single officeholder or when "Representatives are chosen as a group on a statewide basis." *Wesberry v. Sanders*, 376 U.S. 1, 8 (1964).[3] And it is why *no* court has ever vindicated a challenge to *any* winner-take-all system for appointing electors. Mot. 5–6 (collecting cases). A statewide winner-take-all system for appointing a slate of presidential electors no more violates the one person, one vote rule than any other statewide election where everyone is given an equal vote.

Plaintiffs' attempt to recast Texas's system as one "where voters cast a ballot *for the President*—not for Electors" only makes matters worse for them. Resp. 7. If that were true, it would make Texas's system for choosing a winner of the presidential election indistinguishable from an election for Governor in which every voter is given an equal vote. As even Plaintiffs concede, such a system obviously complies with the one person, one vote rule. *Id.* at 13 n.6. "Even though many votes are 'discarded' in the election of Governor," as Plaintiffs describe it, "that is constitutionally acceptable because the election is for a single statewide office." *Id.* Plaintiffs, recognizing their problem, abruptly change course and claim that this case is different because "Texas holds a statewide election for 38 Electors," *id.*, after having devoted most of their brief to arguing that in Texas "citizens do not vote for Electors, they vote for the President in two steps," *id.* at 8. Plaintiffs end up running in circles unsuccessfully attempting to distinguish *McPherson* and *Wesberry*.

---

[3] Accordingly, Plaintiffs' supposition that a statewide election for Texas's entire Senate would violate the one person, one vote rule is unfounded. Resp. 13. Such a system might violate the Equal Protection Clause's prohibition on intentional vote dilution on the basis of race, *supra* at 3–4, or Section 2 of the Voting Rights Act if there were evidence that the system unintentionally "results" in dilution on the basis of race, *infra* at 10–11. As explained, however, Plaintiffs have not brought a claim alleging the former, and their claim alleging the latter fails as a matter of law.

Plaintiffs seem determined to press their contorted "two-step" theory because they are convinced that characterizing Texas's winner-take-all system this way means it violates *Gray v. Sanders*. *Id.* at 9–11. But Plaintiffs' effort is in vain. The problem in *Gray* was that Georgia used a system for statewide primary elections that assigned a certain number of unit votes to each county and awarded all of the county's unit votes to the winner of the county's popular votes. 372 U.S. at 370–71. In practice, the unequal allocation of unit votes favored rural counties to the detriment of urban voters—meaning that some votes cast in the State counted more than others. *See id.* at 379. *Gray* established a rule of equal treatment to which Texas adheres: "Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote." *Id.* Under Texas's system, no vote is weighted and "[e]very voter's vote is entitled to be counted once." *Id.* at 380.

Plaintiffs thus are forced to base their entire claim on a footnote that they rip out of context. Resp. 10 (citing *Gray*, 372 U.S. at 381 n.12). Earlier in the opinion, the Court had noted that Georgia "modified the county unit system by allocating units to counties in accordance with a 'bracket system'" that roughly approximated each county's relative share of the state population. *Gray*, 372 U.S. at 372. The footnote explained that this amendment could not salvage Georgia's system because it still "would allow the candidate winning the popular vote in the county to have the entire unit vote of that county. Hence the *weighting of votes* would continue, even if unit votes were allocated strictly in proportion to population." *Id.* at 381 n.12 (emphasis added). In short, *Gray* applied *McPherson*'s "each citizen has an equal right to vote"

7

principle to invalidate a weighted electoral system that clearly violated it. But Texas neither employs a county-unit system nor weights votes nor violates the principle of equal voting in any other way.

### B.  THE FIRST AMENDMENT CLAIM FAILS AS A MATTER OF LAW.

Nothing in the less than three pages Plaintiffs devote to defending their First Amendment claim can save it from dismissal. Resp. 23–26. Plaintiffs incorrectly claim that they "adequately allege constitutional harms" under the First Amendment. *Id.* at 24. To be sure, the First Amendment is implicated when a State "burdens the political association rights of minority party voters." *Id.* But the "harms" Plaintiffs allege do not implicate that concern. When they complain that the "WTA method eliminates all practical opportunity for non-dominant party voters in Texas to effectively voice their preference for President," *id.*, what they mean is that Texas is denying them the proportional representation they seek, Mot. 13–15. But no court has held that the First Amendment affords minority party voters such a right. This Court should not be the first to do so.

The First Amendment ensures that States do not "restrict political discussion or burden the exchange of ideas," not whether a party wins or loses an election. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 392 (5th Cir. 2013); *Initiative & Referendum Inst. v. Walker,* 450 F.3d 1082, 1099–1101 (10th Cir. 2006) (en banc) (state supermajority requirement to pass ballot initiative complied with the First Amendment because it did not regulate advocacy or limit "communicative conduct of persons advocating a position"). Enshrining a right to proportional representation in the Constitution at

all—let alone in the First Amendment—would make holding elections impossible. After all, "the function of the election process is to winnow out and finally reject all but the chosen candidates." *Burdick v. Takushi*, 504 U.S. 428, 438 (1992) (citation and quotations omitted). "Attributing to elections a more generalized expressive function would undermine the ability of States to operate elections fairly and efficiently." *Id.*; *see also Williams v. Va. State Bd. of Elections*, 288 F. Supp. 622, 627 (E.D. Va. 1968), *aff'd per curiam*, 393 U.S. 320 (1969).

Thus, although Plaintiffs couch their injury as having votes for the Democratic candidate "discarded," it is nothing more than a plea for proportional representation. The suggestion that minority parties in Texas have been denied the right to associate or effectively participate in the presidential election has no factual basis. 3,877,868 Texas voters cast their vote for the Democratic presidential candidate in the 2016 general election. Compl. ¶¶ 2, 4. Far from being discarded, these votes were counted and assessed as comprising 43.2% of the Texas vote. *Id.* ¶ 2. True, the Democratic candidate still lost the election because the Republican Party's candidate secured 52.2% of the Texas vote. *Id.* Unsurprisingly, voters for the Democratic candidate find this disappointing. Losing an election always is. But the First Amendment does not shield them from that disappointment.[4]

---

[4] Plaintiffs thus have not met their threshold burden to show that the First Amendment even applies here. *See Voting for Am., Inc.*, 732 F.3d at 388. Even if they have, however, Texas's interest in maximizing its electoral power outweighs any alleged burden to Plaintiffs. In petitioning the Virginia legislature to adopt a winner-take-all system, Thomas Jefferson recognized that doing so would "protect his State against the use of the general ticket by other States." *Williams*, 288 F. Supp. at 626. That interest holds just as true two centuries later.

### C. THE SECTION 2 CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs assert that "Defendants do not dispute that Plaintiffs have adequately alleged all of the elements of a Voting Rights Act claim." Resp. 4. But that is what Defendants focused on precisely. Mot. 15–19 (discussing *LULAC v. Clements*, 999 F.2d 831, 850–55 (5th Cir. 1993) (en banc)). As Defendants explained, even if Section 2 applies in this setting, *id.* at 15–16, Plaintiffs have not identified any denial or abridgment of the right to vote, let alone a denial or abridgment of the right to vote on account of race because, under *Clements*, an injury suffered on account of partisan preference does not state a Section 2 claim, *id.* at 16–18. Plaintiffs relegate their entire response to a single footnote that does not even mention *Clements*. Resp. 28 n.16. That is because, at most, Plaintiffs allege vote dilution on account of partisan preference, and *Clements* forecloses that claim. "Section 2 is 'a balm for racial minorities, not political ones—even though the two often coincide.'" *Clements*, 999 F.2d at 854 (quoting *Baird v. Consol. City of Indianapolis*, 976 F.2d 357, 361 (7th Cir. 1992)).

Plaintiffs' proposed remedy confirms that their Section 2 claim fails at the outset. Mot. 18–19. Plaintiffs say that their "primary remedy" is for the Texas Legislature to devise a new method of allocating electors. Resp. 29. But to state a Section 2 claim Plaintiffs must identify a non-dilutive alternative plan. *Reno*, 520 U.S. at 480. Their "primary remedy" only underscores that dismissal is required.

Plaintiffs would rather dodge their remedial obligations because it forces them to confess that they want proportional representation—a remedy Section 2 prohibits.

Mot. 18–19. Ultimately, Plaintiffs wind up in a tangle, simultaneously arguing that they are entitled to "a proportional voting remedy," Resp. 29, that "numerous courts have imposed proportional voting remedies in Section 2 cases," *id.* at 29–30, but that they understand Section 2 disclaims "a right to have members of a protected class elected in numbers equal to their proportion in the population," *id.* at 29 (citations and quotations omitted), and, therefore, that they "do not claim that the VRA requires proportional allocation," *id.* at 30 n.18. Try as they might, Plaintiffs simply cannot escape the conclusion that they seek a forbidden proportional remedy for a partisan harm that does not violate Section 2 in the first place.

## CONCLUSION

Defendants respectfully ask the Court to dismiss the Complaint with prejudice.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

/s/   *Patrick K. Sweeten*
PATRICK K. SWEETEN
Attorney-in-Charge
Senior Counsel for Civil Litigation
Texas Bar No. 00798537
Tel.: (512) 463-4139; Fax: (512) 936-0545
patrick.sweeten@oag.texas.gov

MATTHEW H. FREDERICK
Deputy Solicitor General
Texas Bar No. 24040931
Tel.: (512) 936-6407; Fax: (512) 474-2697
matthew.frederick@oag.texas.gov

TODD LAWRENCE DISHER
Special Counsel for Civil Litigation
Texas Bar No. 24081854
Tel.: (512) 936-2266; Fax: (512) 936-0545
todd.disher@oag.texas.gov

ADAM N. BITTER
Assistant Attorney General
General Litigation Division
Texas Bar No. 24085070
Tel.: (512) 475-4055; Fax: (512) 320-0667
adam.bitter@oag.texas.gov

CRISTINA M. MORENO
Assistant Attorney General
General Litigation Division
Texas Bar No. 24105023
Tel.: (512) 475-4072; Fax: (512) 320-0667
cristina.moreno@oag.texas.gov

P.O. Box 12548
Austin, Texas 78711-2548

*Counsel for Defendants Greg Abbott, in his official capacity as Governor of Texas, and Rolando Pablos, in his official capacity as Secretary of State*

WILLIAM S. CONSOVOY (*pro hac vice*)
Consovoy McCarthy Park, PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
Tel.: (703) 243-9423

PATRICK STRAWBRIDGE (*pro hac vice*)
Consovoy McCarthy Park, PLLC
Ten Post Office Square PMB, #706
Boston, Massachusetts 02109
Tel.: (617) 227-0548

*Counsel for Defendants Greg Abbott, in his official capacity as Governor of Texas, and Rolando Pablos, in his official capacity as Secretary of State*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of May, 2018, the foregoing *Reply in Support of Defendants' Motion to Dismiss Complaint for Declaratory and Injunctive Relief* was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record, via the CM/ECF service and/or via electronic mail.

/s/  *Patrick K. Sweeten*
PATRICK K. SWEETEN
Senior Counsel for Civil Litigation